# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FIRST TITLE & ESCROW, INC., a Maryland Corporation | CASE NO: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| CHETU, INC., a Florida Corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. _____/ | |

## COMPLAINT

Plaintiff, First Title & Escrow, Inc. ("First Title"), by and through the undersigned counsel, files this Complaint against Defendant, Chetu, Inc. ("Chetu"), and states as follows:

## NATURE OF THE ACTION

1.   This is a civil action based on Chetu's breach of contract, misappropriation of trade secrets, and misappropriation of likeness under the Florida Uniform Trade Secrets Act, Florida Deceptive and Unfair Trade Practices Act, and Section 540.08, Florida Statutes, respectively.

2. Despite its contractual obligations, Chetu openly shared First Title's trade secrets and intellectual property by marketing First Title's sensitive and protected information to countless individuals, entities, and competitors of First Title. As part of its marketing efforts, Chetu also publicly displayed images of First Title's employees and officers for the purpose of inducing its potential customers to use Chetu's services.

3. Despite First Title's demands that Chetu cease using First Title's trade secrets, intellectual property, and images and likeness, Chetu continues to violate Florida law and its contractual obligations.

## THE PARTIES

4. Plaintiff, First Title & Escrow, Inc., is a foreign profit corporation that maintains its principal place of business at 30 W. Gude Drive, Suite 420, Rockville, Maryland.

5. At all times relevant hereto, First Title is registered to do business in the State of Florida as a foreign entity corporation.

6. Defendant, Chetu, Inc., is a Florida profit corporation that maintains its principal place of business at 1500 Concord Terrace, Suite 100, Sunrise, Florida.

7. At all times relevant hereto, Chetu is registered to do business in the State of Florida.

## JURISDICTION AND VENUE

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant transacts business in this district and a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this judicial district and/or a substantial part of the property that is the subject of the action is situated in this district.

9. Moreover, venue is proper in this judicial district because the contract, which forms the basis of First Title's claims, was executed in or about Broward County, Florida.

10. This Court has subject matter jurisdiction over this action because diversity of citizenship exists, pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000) and no Plaintiff shares a state of citizenship with any Defendant as set forth in 28 U.S.C. § 1332(a).

11. Pursuant to Fla. Stat. 48.193, this Court has personal jurisdiction over Chetu as they conduct business in Florida.

12. All conditions precedent to the commencement of this action, if any, have been performed, satisfied, waived, excused or have occurred.

**FACTUAL BACKGROUND**

13.     First Title realleges and restates Paragraphs 1 – 12 as if fully set forth herein.

14.     First Title is a leader in the title insurance and closing services industry. First Title has created and implemented cutting edge, proprietary computer software systems to gain a competitive advantage over its competitors.

15.     On or about September 8, 2017, First Title and Chetu entered into an Agreement for Software Development and Maintenance Services ("Agreement") for design, development, and support services related to First Title's proprietary computer software system. A true and correct copy of the Agreement is attached hereto as *Exhibit A*.

16.     According to the Agreement, Chetu agreed to "provide consultants for information technology services a are identified to Chetu by [First Title]." The services performed by the consultants included "analysis, design, development, testing, installation and maintenance of software amongst other things." Exh. A at Para. 1.

17. Chetu agreed that all information supplied by First Title or that become known during the course of its work would be confidential. Exh. A at Para. 6. The relevant portions of Paragraph 6 are included below:

> 6) Confidential Information. Each party acknowledges that all material and information supplied by either party ("Owner") which has or will come into other party's ("Recipient") possession or knowledge in the course of performance of this Agreement, is to be considered Owner's confidential and proprietary information (the "Confidential Information"). By way of illustration, but not as a limitation, Confidential Information includes the Software, trade secrets, processes, data, know-how, program codes, documentation, flowcharts, algorithms, marketing plans, forecasts, unpublished financial statements, budgets, licenses, prices, costs, and employee, past, present and potential customer lists etc. Recipient's undertakings and obligations under this Section will not apply, however, to any Confidential Information which: (i) is or becomes generally known to the public through no action on Recipient's part, (ii) Recipient rightfully receives from a third party without restriction; (iii) Recipient develops it independently or already had knowledge of such information prior to disclosure by Owner; or (iii) is approved for release by written authorization of Owner.

Exh. A at Para. 6.

18. Chetu agreed to return all "notes, memoranda, notebooks, drawings, records, reports, files, documented source codes and other documents (and all copies or reproductions of such materials) in its possession or under its control, whether prepared by [Chetu] or others, which contain Confidential Information." Exh. A at Para. 6.

19. Chetu also agreed that all "Chetu Created Intellectual Property shall be considered 'work made for hire' under applicable copyright law and the copyright will, subject to Customer's compliance with the terms of this Agreement and upon receipt." Exh. A at Para. 7(b).

20. Chetu expressly agreed in the Agreement that it retained no "licenses or rights to any of the Intellectual Property of the one party are given or intended to be given to the other party." Exh. A at Para. 7(c).

21. These restrictive covenants are necessary to protect First Title's legitimate business interests since First Title's confidential and trade secret information is not available to the public or generally known in the industry.

22. First Title complied with all its contractual obligations, including payment of all monies owed to Chetu.

23. Despite this, Chetu violated, and continues to violate, both its contractual obligations and Florida law.

24. Upon information and belief, on November 5, 2021, representatives of Chetu made a Zoom presentation to The Security Title Guarantee Corporation, a direct competitor of First Title.

25. During this presentation, Chetu offered to license the software application – worked performed subject to the Agreement—to The Security Title Guarantee Corporation.

26. Specifically, Chetu described the workflow of the application developed for First Title and even included photographs of First Title's officers/employees without their or First Title's permission.

27. Chetu did so with the intent of inducing potential customers to retain Chetu to construct identical, if not extremely similar, software systems to First Title that would greatly diminish First Title's competitive advantage.

28. At no time did Chetu have First Title's permission, written or otherwise, to present display, tout, or otherwise reference First Title's intellectual property or images of their officers/employees.

29. Upon discovering Chetu disclosed trade secrets and used the likeness of First Title's officers/employees, on November 23, 2021, First Title sent Chetu issued a cease-and-desist letter to Chetu. A true and correct copy of the cease-and-desist letter is attached hereto as ***Exhibit B.***

30. On March 10, 2022, First Title sent a second cease-and-desist letter to Chetu. A true and correct copy of the cease-and-desist letter is attached hereto as ***Exhibit C***.

31. To date, Chetu has refused to stop its wrongful actions.

32. As a result of Chetu's actions, First Title has suffered monetary damages including, but not limited to, actual damages and lost profits. Pursuant to Paragraphs 6 and 12(d) of the Agreement, Chetu agrees First Title is suffering irreparable damage and is seeking injunctive relief, as well as monetary damages.

33. All conditions precedent to the institution and maintenance of this action have occurred or been performed by First Title.

34. First Title have engaged the law firm of Stanton IP Law Firm, P.A. to represent them and are obligated to pay their attorneys a reasonable fee for their services in this action.

## COUNT I – BREACH OF CONTRACT

35. First Title realleges Paragraphs 1 – 34 as if fully set forth herein.

36. First Title entered into a valid and binding contract with Chetu (the Agreement for Software Development and Maintenance Services attached hereto).

37. Pursuant to the Agreement, Chetu is obligated to: protect First Title's trade secrets, confidential information, or intellectual property as confidential and proprietary information; return all materials provided by First Title upon completion or termination of the Agreement; obtain written permission before disclosing or using First Title's trade secrets and intellectual property; among other obligations.

38. These restrictive covenants are necessary to protect First Title's legitimate business interests since First Title's confidential and trade secret information is not available to the public or generally known in the industry.

39. Chetu has materially breached the Agreement by presenting, displaying, touting, or otherwise referencing First Title's trade secrets, confidential information, and/or intellectual property.

40. As a direct and proximate cause of Chetu's actions, First Title has incurred substantial damages which are irreparable and cannot be fully or adequately measure or compensated by monetary relief.

41. Unless enjoined by this Court, Chetu will continue breaching the Agreement.

## COUNT II – FLORIDA UNIFORM TRADE SECRETS ACT

42. First Title realleges Paragraphs 1 – 34 as if fully set forth herein.

43. First Title's highly confidential trade secrets include, but are not limited to, the cutting edge, proprietary computer software systems created, designed, and implemented by First Title to gain a competitive advantage in its industry. The programs and processes that makeup First Title's software systems, as well as any other information obtained while working for First Title, constitute trade secrets protected under the Florida Uniform Trade Secrets Act ("FUTSA") or Section 688.001, Florida Statutes.

44. First Title has taken, and continues to take, reasonable steps to maintain the secrecy of these trade secrets. These trade secrets are not generally known or readily ascertainable by other persons who could not obtain economic value from their disclosure or use.

45. First Title is the owner of these trade secrets as the creator and designer of the computer software system. First Title's ownership rights as it pertains to the work performed by Chetu is further explained in the Agreement.

46. During its work under the Agreement, Chetu had access to First Title's most confidential data and materials. Chetu agreed, in writing, to protect any information Chetu learned including, but not limited to "the [software that is the subject of the Agreement], trade secrets, processes, data, know-how, program codes, documentation, flowcharts, algorithms, marketing plans, forecasts, unpublished financial statements, budgets, licenses, prices, costs, and employee past, present, and potential customer lists, etc." Exh. A at Para. 6.

47. Chetu agreed to return all information supplied by First Title during the course of its work, including notes, memoranda, notebooks, drawings, records, reports, files, documented source codes and other related documents. Exh. A at Para. 6.

48. By disseminating First Title's trade secrets to unrelated persons, entities, and even First Title's competitors, Chetu has misappropriated such information in violation of the FUTSA.

49. Chetu has been unjustly enriched by the information wrongfully obtained from First Title.

50. The acts and threatened acts of misappropriation or misuse by Chetu has directly and proximately caused, and will continue to cause, damage to First Title. First Title has suffered monetary damages including, but not limited to, actual damages and lost profits. Pursuant to Paragraphs 6 and 12(d) of the Agreement, Chetu agrees First Title is suffering irreparable damage and is seeking injunctive relief, as well as monetary damages.

51. Disclosure and use of First Title's trade secrets has resulted, and will continue to result, in immediate and irreparable harm to First Title for which there is no adequate remedy at law.

52. At all material times, Chetu's conduct was wanton, willful, and malicious.

## COUNT III – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

53. First Title realleges Paragraphs 1 – 34 as if fully set forth herein.

54. Chetu has unlawfully used and published trade secrets and intellectual property belonging to First Title to obtain a competitive advantage for their own services in the market.

55. Additionally, Chetu used the name and likeness of First Title's officers and/or employees with the hope of securing additional customers for their services.

56. Chetu's actions constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Section 501.204, Florida Statutes.

57. Chetu's conduct is willful, wanton, malicious, deliberate and with reckless disregard for First Title's rights.

58. First Title has suffered monetary damages including, but not limited to, actual damages and lost profits. Pursuant to Paragraphs 6 and 12(d) of the Agreement, Chetu agrees First Title is suffering irreparable damage and is seeking injunctive relief, as well as monetary damages.

## COUNT IV – MISAPPROPRIATION OF LIKENESS – SECTION 540.08, FLORIDA STATUTES

59. First Title realleges Paragraphs 1 – 34 as if fully set forth herein.

60. Chetu have, without First Title's knowledge or consent, used images of First Title's officers and/or employees for marketing purposes.

61. Chetu gained pecuniary benefits from the unauthorized use of the images and likeness of First Title officers and/or employees to advertise its business and to promote their services, all in violation of Section 540.08, Florida Statutes.

62. Despite First Title's demand that Chetu cease using the images of First Title officers/employees, Chetu have maliciously and willfully continued such use.

63. As a direct and proximate cause of Chetu's conduct, First Title has suffered monetary damages including, but not limited to, actual damages and lost profits. Pursuant to Paragraphs 6 and 12(d) of the Agreement, Chetu agrees First Title is suffering irreparable damage and is seeking injunctive relief, as well as monetary damages.

64. Pursuant to Section 540.08, Florida Statutes, First Title has obtained written consent from its officers/employees authorizing First Title to bring this action on their behalf, which are attached hereto as *Composite Exhibit D*.

**WHEREFORE**, First Title demand judgment against Chetu for:

a) an injunction preliminarily during the pendency of this action and permanently thereafter enjoining and restraining Chetu, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from disclosing First Title's trade secrets, and from continuing to operate their business in any manner tending to confuse or deceive the public into believing that their business is in any way connected with, sponsored by, or affiliated with First Title;

b) an order directing Chetu to file with the Court and serve upon First Title a report in writing under oath setting forth in detail the manner and form in which Chetu has disseminated First Title's trade secrets and proprietary information, and file a report describing the manner in which Chetu complied with the injunction entered by the Court within thirty (30) days after the entry of the injunction.

c) an accounting of Chetu's wrongfully derived profits and an order that the same be paid over to First Title;

d) restitution to First Title of any and all monies Chetu has acquired by means of unfair competition;

e) interest on such profits and damages at the highest rate allowed by law;

f) costs of this action;

g) attorneys' fees pursuant to the Agreement; and

h) such other relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

First Title & Escrow, Inc., by and through their undersigned attorneys, request a trial by jury on all issues so triable.

## RESERVATION OF RIGHTS

First Title reserves the right, upon further investigation and discovery, to assert such claims against Chetu and other responsible parties as may be just and appropriate under the circumstances.

Dated: May 9, 2022

Respectfully submitted,

*/s/ Thomas H. Stanton*
Thomas H. Stanton
Florida Bar No. 127444
Stanton IP Law Firm, P.A.
201 East Kennedy Boulevard, Suite 1900
Tampa, FL 33602
813.421.3883
tstanton@stantoniplaw.com
*Counsel for Plaintiff*